UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD D. BRASSEUR,

        Plaintiff,

v.                               Case No. 1:10-cv-1260
                                       Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on May 30, 1959 (AR 164).[1] He earned a GED in 1986 (AR 174). Plaintiff alleged a disability onset date of October 15, 2003 (AR 164). He had previous employment as a delivery person for a mattress company, a general laborer, a heavy equipment operator, a production worker and a roofer/carpenter helper (AR 169). Plaintiff identified his disabling conditions as: seizures; chronic back pain; blackouts; and bronchial asthma (AR 168). On December 16, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 14-25). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

2

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases.  *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).  "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.   ALJ'S DECISION

Plaintiff's claim failed at the fifth step.  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 15, 2003 and met the insured status requirements of the Social Security Act through December 31, 2007 (AR 16).  At step two, the ALJ found that plaintiff suffered from severe impairments as follows: status-post repair of the left thumb; chronic obstructive pulmonary disease (COPD); syncope attributable to coughing; depression; and cannabis, alcohol and tobacco abuse (polysubstance abuse) (AR 16-18).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 11.02 (Epilepsy - convulsive epilepsy), 11.03 (Epilepsy - nonconvulsive epilepsy),  and 12.04 (Affective disorders) (AR 18-20).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC):

> . . .  to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  He is limited to the performance of rote tasks, must have no more than minimal contact with the public, is prohibited from constant pushing or pulling with the left arm, cannot climb ladders, ropes or scaffolding; can occasionally climb ramps and stairs; can occasionally perform postural maneuvers; is prohibited from exposure to extremes of cold, heat, humidity, odors, fumes, dust and areas of poor ventilation; is prohibited from working around hazards; and is prohibited from commercial driving.

(AR 20).  The ALJ further found that plaintiff could not perform any of his past relevant work (AR 24).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 24-25).  Specifically, plaintiff could perform 37,000 jobs in the regional economy (defined as the state of Michigan) such as assembler (16,000 jobs); packer (16,000 jobs); and custodial worker (5,000 jobs) (AR 24-25).  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 15, 2003 through the date of the decision (December 16, 2008) (AR 25).

### III.  ANALYSIS

Plaintiff raised three issues on appeal.

### A.    The RFC and hypothetical question failed to account for the finding of moderate difficulties in concentration, persistence or pace.

Plaintiff contends that the ALJ found that plaintiff had "moderate" difficulties in concentration, persistence or pace, but failed to convey these limitations in either the RFC or hypothetical question posed to the VE.  The ALJ made these findings at step two of the sequential process, when he found that plaintiff did not meet the requirements of the "paragraph B" criteria of Listing 12.04 (AR 19).  On appeal, plaintiff erroneously equates this "paragraph B" finding with the ALJ's RFC determination made at step four of the sequential process.

RFC is a medical assessment of what an individual can do in a work setting notwithstanding functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  20 C.F.R. § 404.1545.  RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis.  20 C.F.R. Part 404, Subpt. P, App. 2, §

200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). In this case, the ALJ found that plaintiff could perform a limited range of light work (AR 20).

On the other hand, the ALJ's "paragraph B" finding was not intended as an RFC assessment; rather it was made in determining whether plaintiff met the requirements for a Listed impairment. Social Security Ruling (SSR 96-8p) explicitly states that the limitations used in the "paragraph B" criteria are not an RFC assessment:

> *The psychiatric review technique.* The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8 (Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims), 1996 WL 374184 at *4 (July 2, 1996). *See, e.g., Hensley v. Astrue*, No. 07-217-GWU, 2008 WL 1026237 at *7 (E.D. Ky. April 9, 2008) (observing that SSR 96-8p provides that the "B" criteria are not intended to be a RFC assessment, but are used in conjunction with the remainder of the PRTF to determine whether a listing is met). *See also, Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (distinguishing between the ALJ's "finding" on a "standard psychiatric assessment form," which the court described as a "simple frequency assessment," and the ALJ's requirement to develop a hypothetical question which is "a complete and accurate assessment of [the claimant's] mental impairment"). The ALJ did not commit error by omitting the "paragraph B" criteria as part of the RFC determination.

Plaintiff's argument with respect to the hypothetical question is similarly without merit. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. While the RFC is frequently used as a basis for the hypothetical question posed to the VE, the ALJ's "paragraph B" finding is not the RFC. Accordingly, the ALJ's hypothetical question was not flawed for failing to incorporate the "paragraph B" findings.

**B. The decision fails to properly evaluate the opinion evidence under 20 C.F.R. § 404.1527.**

Plaintiff contends that the ALJ failed to properly evaluate several medical opinions. The only opinions which plaintiff addresses in detail are those of his treating physicians Loretta M. Leja, M.D. (sometimes referred to as "Dr. Laja") and Christopher Gunnell, M.D. Plaintiff's Brief at pp. 6-8.

It is undisputed that both Dr. Leja and Dr. Gunnell were treating physicians. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2).  An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation.  *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).  In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526.  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

### 1.      Plaintiff's *post hoc* rationalization argument

In his reply, plaintiff contends that defendant's brief improperly raised *post hoc* rationalizations to justify the ALJ's decision.  Plaintiff does not cite any particular portion of defendant's brief, stating only that defendant "attempts to supplement the ALJ's evaluation of the treating source opinion by citing multiple records from the transcript, including specific reasoning why the ALJ *could* have rejected the opinion of the treating source."  Plaintiff's Brief at p. 3 (emphasis in original).  Plaintiff contends that it is the responsibility of the ALJ, not the United States Attorney, to properly evaluate the evidence and explain the reasoning for the ALJ's conclusions.  *Id.*  Plaintiff relies on *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), in which the Supreme Court stated in pertinent part:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law.  That rule is to the effect that a reviewing court, in dealing

8

> with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.  To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery*, 332 U.S. at 196.

Some circuits have strictly applied the *Chenery* principle in reviewing Social Security disability appeals.  *See, e.g., Murphy v. Commissioner of Social Security,* 423 Fed. Appx. 703, 704 (9th Cir. 2011) (in reviewing the agency action, "this court 'must judge the propriety of such action solely by the grounds invoked by the agency'") (citing *Chenery*);  *Eakin v. Astrue*, 432 Fed. Appx. 607, 611-12 (7th Cir. 2011) ("The *Chenery* doctrine precludes a government lawyer from invoking a new rationale to rehabilitate an administrative decision");  *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010) ("in defiance of the principle of *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88, 63 S.Ct. 454, 87 L.Ed. 626 (1943), the government's lawyers who defend denials of disability benefits often rely heavily on evidence not (so far as appears) relied on by the administrative law judge, and defend the tactic by invoking an overbroad conception of harmless error").

In the Sixth Circuit, courts determine whether the ALJ's decision is supported by substantial evidence based upon the record taken as a whole.  *See McKnight*, 927 F.2d 241; *Young*, 925 F.2d 146.  As the court explained in *Williams v. Commissioner of Social Security*, 227 Fed. Appx. 463, 464 (6th Cir. 2007), courts in this circuit do not mechanically apply *Chenery* to reverse an erroneous ALJ's decision when that decision is supported by substantial evidence in the record:

> The district court recognized that the Administrative Law Judge ("ALJ"), whose analysis of the evidence the Commissioner adopted, cited the wrong standard in the body of his decision, i.e., the wrong subsection in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05.  The district court carefully considered this error and concluded that the mistaken reference to § 12.05D, instead of §

12.05C, did not in any way undermine the substance of the analysis or the conclusions reached by the ALJ.  Appellant contends the district court's attempt to legitimize the ALJ's error is an illegitimate post hoc rationalization, contrary to the rule of *S.E.C. v. Chenery*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), that a reviewing court, in assessing the decision of an administrative agency, must judge its propriety solely by the grounds invoked by the agency.

Consistent with *Chenery*, the district court evaluated the actual grounds invoked by the ALJ and found them to be supported by substantial evidence, despite the technically erroneous reference included in the ALJ's decision.  The district court's reasoning is also fully consistent with this Circuit's precedents.  *See Pasco v. Comm'r of Soc. Sec.*, 137 Fed.Appx. 828, 847 (6th Cir.2005) (holding that if decision is supported by substantial evidence, any need to consider *post hoc* rationalization objection is obviated); *Berryhill v. Shalala*, No. 92-5876, 1993 WL 361792, at *7 (6th Cir. Sept. 13, 1993) (unpublished) (holding that although an agency decision must be sustained, if at all, on its own reasoning, this principle does not mechanically compel reversal when a mistake was made that clearly had no bearing on the procedure used or the substance of the decision reached); *VanSingel v. Comm'r of Soc. Sec.*, 26 Fed.Appx. 488, 490 (6th Cir.2002) (same).  Thus, the district court's judgment does not run afoul of the rule against *post hoc* rationalizations.

Accordingly, we find no error in the district court's conclusion that the Commissioner's decision is supported by substantial evidence.  *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir.2005) (observing that the Commissioner's factfinding, if supported by substantial evidence, must be upheld even if there is substantial evidence that could support an opposite conclusion).  The judgment of the district court is, upon the reasoning employed in its opinion dated January 20, 2006, hereby **AFFIRMED**.

*Williams*, 227 Fed. Appx. at 464.  *See also, Beinlich v. Commissioner*, 345 Fed. Appx. 163, 169 (6th Cir. 2009) (even if the district erred by citing evidence in the administrative record that was beyond "the reasoning employed by the agency," such error was harmless where the ALJ's finding was supported by substantial evidence); *Lindsley v. Commissioner of Social Security*, 560 F.3d 601, 606-07 (6th Cir. 2009) (where a magistrate judge's review of the Dictionary of Occupational Titles was arguably in error (by addressing grounds not invoked by the agency in violation of *Chenery*), any such error was harmless because the vocational expert's testimony provided "substantial evidence

supporting the ALJ's determination that [the claimant] did not suffer from a statutory disability"); *Berryhill*, 1993 WL 361792 at *7 (adopting rule as set forth in *Kurzon v United States Postal Service*, 539 F.2d 788, 796 (1st Cir. 1976) that "while agency decisions must be sustained, if at all, on their own reasoning," this principle "does not mechanically compel reversal when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of [the] decision reached") (internal quotation marks omitted).  As illustrated below, this court will not utilize the *Chenery* principle to mechanically reverse an ALJ's decision where substantial evidence supports the ALJ's determination.

### 2.    Mental limitations

### a.    Dr. Leja

Dr. Leja issued a medical opinion on or about October 23, 2007 at the request of plaintiff's counsel (AR 20, 383-86, 460).  In this opinion, Dr. Leja checked boxes indicating that plaintiff's mental ability to perform unskilled work was either "poor" or "none" with respect to 11 of 16 of the listed abilities (e.g., the ability to remember work-like procedures, maintain attention for a two hour segment, deal with normal work stress, and accept instructions and respond appropriately to criticism from supervisors) and only "fair" with respect to the remaining 5 abilities (e.g., the ability to understand very short and simple instructions, and carry out very short and simple instructions, and make simple work-related decisions) (AR 384).  Similarly, Dr. Leja indicated that plaintiff's mental ability to perform semi-skilled and skilled work was either "poor" or "none" with respect to 3 of the 4 abilities (i.e., the ability to understand and remember detailed instructions, carry out detailed instructions, set realistic goals and make plans independently of others) (AR 385).  In addition, Dr. Leja found that plaintiff lacked the mental ability to perform various jobs (i.e., interact

appropriately with the general public, maintain socially acceptable behavior, travel in an unfamiliar place, and use public transportation) (AR 385).  Dr. Leja explained these limitations by stating that plaintiff had a "poor understanding of medical conditions & follow through due to lack of understanding" (AR 385).  The doctor also found that, on average, plaintiff would be absent from work more than three times a month (AR 386).  The doctor also stated that these conditions had been in effect since February 21, 2006 (AR 386).  In summary, Dr. Leja's opinion indicated that plaintiff suffered from extreme mental impairments which left him with the ability to perform only some types of unskilled, simple work.

The ALJ noted that Dr. Leja  discharged plaintiff from her practice shortly after completing this opinion (AR 20).  Dr. Leja's records reflect that on October 25, 2007, the doctor informed plaintiff's wife that she [the doctor] "was aware that they have been abusing their medications" and "that they were discharged from the practice" (AR 456, 506).  The ALJ gave Dr. Leja's opinion little probative value because the doctor was not a mental health professional, was not an integral source of therapy, and the doctor's narrative office records did not reflect such pervasive mental-health limitations (AR 20).

As an initial matter, the court disagrees with the ALJ's rejection of Dr. Leja's opinions on the ground that she was not a mental health professional.  It is well established that an ALJ can discount a psychologist's opinion about the claimant's physical functioning, because a psychologist was not qualified to diagnose a physical condition.  *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001).  However, as Dr. Leja's records reflect, medical doctors are qualified to prescribe medication to treat mental illness.  Accordingly, there is no basis for the ALJ to reject the doctor's opinion on the ground that she was not a "mental health professional."

12

Nevertheless, the ALJ's conclusion that the doctor's narrative office records did not reflect such "pervasive mental-health limitations" is supported by substantial evidence (AR 456-504). The record reflects that at various times, Dr Leja diagnosed plaintiff with a major depressive disorder and prescribed Ritalin and Zoloft (AR 460, 470-72, 504). The doctor also noted the absence of depression and mood changes as reflected in her treatment notes of April, June, and August 2007 (AR 462-69). While these records reflect that plaintiff suffered from depression at times, there is no indication that he suffered from the types of disabling limitations as indicated by Dr. Leja in her opinion of October 23, 2007. Accordingly, the ALJ could properly discount this opinion.

### b. Dr. Gunnell

The ALJ pointed out that plaintiff first saw Dr. Christopher Gunnell in December 2007 (AR 22, 636). On or about July 23, 2008, Dr. Gunnell filled out the same type of medical opinion form as Dr. Leja (AR 618-21). This form listed fewer restrictions than the form prepared by Dr. Leja (AR 618-21). For example, Dr. Gunnell found that plaintiff's mental ability to perform unskilled work, semi-skilled work and skilled work was generally "fair" (AR 619). In addition, plaintiff had a "fair" mental ability to perform jobs (AR 620). Dr. Gunnell also found that plaintiff was likely to miss work more than three times per month (AR 621). The doctor attributed plaintiff's mental limitations on chronic back pain, disc disease, and pulmonary disease "which would affect his endurance and attention" (AR 620).

The ALJ gave Dr. Gunnell's opinion little probative value because the doctor was not a mental health professional, was not an integral source of therapy, and the doctor's narrative office records did not reflect such pervasive mental-health limitations (AR 20). In addition, the ALJ

noted that Dr. Gunnell did not specify when the deficits came into effect (AR 20).  Again, the court disagrees with the ALJ's discounting of Dr. Gunnell's opinions on the basis that the doctor was not a "mental health professional."  Dr. Gunnell, like Dr Leja, could treat and prescribe medication for mental illness.  However, Dr. Gunnell's treatment notes are not very detailed and contain few references to mental impairments (AR 599-640).  The court agrees with defendant that Dr. Gunnell's treatment notes do not reflect  pervasive mental limitations as indicated by his opinion of July 28, 2008 (AR 599-640).  Accordingly, the ALJ could properly discount this opinion.

      c.     **Drs. Newhouse, Marshall and Yousuf**

Plaintiff contends that these three DDS consultants, Robert Newhouse, M.D. (AR 313-31),  Ron Marshall, Ph. D. (AR 412-29), and Zahra Yousuf, (AR 579-98) found that plaintiff had moderate limitations in at least one of his mental abilities.  Plaintiff's Brief at p. 4.  Each of these consultants prepared a PRTF and a mental RFC assessment with respect to plaintiff: Dr. Newhouse in December 2004; Dr. Marshall in September 2006; and Dr. Yousuf in March 2008.  The ALJ did not address the opinions expressed by these three consultants.  Although each of the consultants concluded that plaintiff's limitations did not preclude him from performing work on a sustained basis.

With respect to Dr. Newhouse, plaintiff relies on a statement  made in Section I ("Summary Conclusions") of the mental RFC assessment form (AR 314).  However, this statement from the "summary conclusions" is not the RFC assessment.  The form, the SSA-4734-F4-SUP, is explained in the agency's Policy Operations Manual (POMS), § DI 24510.060.  The "summary conclusions" in Section I relate to 20 areas of mental functioning.  For each area of mental functioning, the agency physician evaluates the claimant as either "not significantly limited,"

"moderately limited," markedly limited," "no evidence of limitation in this category," or "no ratable based on available evidence" (AR 264).  *See* POMS § DI 24510.060(B)(2)(c).  "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**."  POMS § DI 24510.060(B)(2)(a). [Emphasis is original.]  The residual functional capacity assessment (RFC) appears in a narrative format in Section III of the form. POMS § DI 24510.060(B)(4).  *See, e.g., Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002) ("worksheet observations" made by DDS physician that claimant was "moderately limited" in three areas of mental functioning, but "not significantly limited" in the other 17 areas of functioning translated into a mental RFC that the claimant "could perform repetitive, low stress work").  Here, Dr. Newhouse found that plaintiff had depression, is not engaged in therapy, had one dose of antidepressant with no change, remains able to perform his own activities of daily living,  has poor motivation and energy, and would have trouble with complex detailed tasks (AR 315).  Based on the record, Dr. Newhouse concluded that plaintiff  mental RFC was as follows:

> He is somewhat isolated but can get out in public, drive and visit.  Retains ability to do simple tasks on a sustained basis.

(AR 315).

Approximately 21 months later, in September 2006, Dr. Marshall concluded that plaintiff "may work better with minimal contact with the publin[sic]" and that he "[r]etains ability to do rote tasks on a sustain [sic] basis" (AR 428).

Then, in March 2008, Dr. Yousuf assessed plaintiff's RFC as follows:

> Evidence in file indicates that the claimant retained the mental capacity to understand, remember, maintain concentration, pace, get along with others, respond to change in order to complete simple unskilled tasks on a sustained basis for the above time period.

(AR 581).

These three consultants determined that plaintiff had the mental RFC to perform rote, simple or unskilled tasks on a sustained basis with minimal public contact. Accordingly, plaintiff's claim of error that the ALJ failed to acknowledge the findings of moderate limitations by Drs. Newhouse, Marshall and Yousuf should be denied.

### 2.   Physical limitations

Plaintiff contends that the ALJ improperly evaluated the opinions of both Dr. Leja and Dr. Gunnell with respect to his physical limitations. In a form procured by plaintiff's counsel, and dated October 23, 2007, Dr. Leja stated that in an 8-hour workday, plaintiff could only sit two hours, stand two hours, and walk for 30 minutes (AR 22, 452). In addition, plaintiff could only sit, stand and walk for 30 minutes at a time (AR 452). The doctor stated that these deficits have been in effect since February 21, 2004 (AR 452). Dr. Leja also limited plaintiff to lifting  five pounds occasionally and never lifting ten pounds, and to carrying five pounds occasionally and never carrying ten pounds (AR 452). Dr. Leja stated that plaintiff had these lifting and carrying deficits since February 21, 2006  (AR 452). In his opinion, Dr. Gunnell stated that in an 8-hour workday, plaintiff could only sit one hour, stand one hour, sit/stand as needed for one hour, was unable to walk more than 30 minutes (AR 614-17). In addition, plaintiff could only sit, stand and walk for 30 minutes at a time (AR 614). Dr. Gunnell limited plaintiff to occasionally lifting five pounds and never lifting 25 pounds, and to occasionally carrying five pounds and never carrying 10 pounds (AR 614). Dr. Gunnell also stated that all of plaintiff's deficits had been in effect since February 21, 2006 (AR 614).

The ALJ found these opinions "suspect" because the forms prepared by the two doctors stated that the deficits began on February 21, 2006, and "that both of them said that the claimant had the ability to sit, stand and walk for 30 minutes at a time and essentially cited the same limitations, including a limitation on lifting and carrying no more than five pounds on occasion" (AR 22). The ALJ found the similar restrictions noteworthy because neither doctors' narrative office records reflected such "overwhelming limitations" (AR 22). The ALJ concluded that the objective evidence did not establish limitations consistent the medical record, noting that the doctors' reports "greatly depart from their own narrative records, the results of conventional testing, objective findings and his [plaintiff's] daily activities (AR 23).

However, the ALJ's review of the doctors' narrative office records is cryptic at best. For example, the ALJ stated that "in mid 2005" Dr. Leja stated that plaintiff had no unusual neurological condition, that his muscle strength and sensation were intact, and that as late as October 2007 plaintiff had no diminution in range-of-motion (AR 22). The ALJ did not point to any particular record, citing only Exhibit 24F (an exhibit consisting of 90 pages of medical records found at AR 456-545) (AR 22). The ALJ discounted Dr. Gunnell's opinion because Gunnell had no personal knowledge of plaintiff's condition on February 21, 2006, a date nearly 20 months before the doctor began treating him (AR 22). The ALJ also points to a record in March 2008, in which plaintiff informed Dr. Gunnell that he had no pain (AR 22). As with Dr. Leja, the ALJ did not identify any particular record in support of this conclusion, but merely cited Exhibit 33F (an exhibit consisting of 50 pages of medical records found at AR 614-63) (AR 22). The ALJ also referred to radiographs of plaintiff's lumbar spine from June 2005 which showed only mild degenerative disc disease and an MRI of plaintiff's lumbar spine which showed no evidence of disc protrusion, spinal

17

stenosis or nerve root exiting (AR 22).  Finally, while the ALJ states that the doctors' reports depart from plaintiff's daily activities, he does not set out those daily activities in the decision.

In summary, while the ALJ contends that the doctors' opinions "greatly depart" from their own narrative records, he makes only cursory references to the doctors' narrative records, points out only a few vague examples to demonstrate that the opinions "greatly depart" from those records, fails to cite specific documents and does not address plaintiff's daily activities.   Under these circumstances, the ALJ has not articulated his good reasons for rejecting the opinions of Drs. Leja and Gunnell.  *See Wilson*, 378 F.3d at 545.  The Commissioner must provide a statement of evidence and reasons on which the decision is based.  *See* 42 U.S.C. § 405(b)(1).   While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35 (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record), an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning," *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of Dr. Leja's and Dr. Gunnell's reports regarding plaintiff's physical limitations.

### C.   ALJ Prothro erred in failing to evaluating [sic] the claim under Listing 12.05(C), and not finding that the claimant's impairments meet or equal Listing 12.05(C).

Plaintiff contends that he meets the listing for mental retardation under Listing 12.05(C) and that the ALJ erred by failing to address this condition.  A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987).  In

18

order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency").   If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Listing 12.05 provides in pertinent part as follows:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

                    *        *        *

C.      A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing 12.05C,  20 C.F.R. Pt. 404, Subpt. P, App. 1.

Here, plaintiff has submitted IQ testing from 1974, which indicated that he had a verbal IQ of 70, a performance IQ of 85, and a full scale IQ of 76 (AR 652).  However, plaintiff has no recent record of IQ testing to support his claim of mental retardation. Defendant points out that this decades-old IQ score is not current under 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00D. 10:

> IQ test results must also be sufficiently current for accurate assessment under 112.05.  Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior.  IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above.  IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above.

112.00(D)(10) (Mental Disorders),  20 C.F.R. Pt. 404, Subpt. P, App. 1.

In addition, plaintiff has not met the diagnostic requirement for mental retardation under the listings.  There is no record that plaintiff was diagnosed with mental retardation before age 22.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("recent amendments to the regulations further clarify that a claimant will meet the listing for mental retardation only '[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria. . . .' 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) [noting that "Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation"]"). Similarly, there is no medical evidence that plaintiff was diagnosed with mental retardation as an adult.  Plaintiff's application for benefits was not based upon a claim of mental retardation and he does not identify any medical record referencing a diagnosis of  that condition.  In this regard, "mental retardation" does not appear in any of the  mental RFC assessments or Psychiatric Review Technique forms prepared by DDS doctors, the consultative examination by the DDS (Edward G.

Tava, Ed. D.) or plaintiff's treating physicians  (AR 301-04, 313-31, 383-86, 391-95, 412-29, 567-98).  Given this record, there was no basis for the ALJ to address plaintiff's newly asserted claim that he met the requirements for mental retardation under Listing 12.05(C).  Plaintiff's claim of error that the ALJ failed to address the mental retardation listing should be denied.

### IV.    Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate Dr. Leja's and Dr. Gunnell's reports regarding plaintiff's physical limitations, and their impact on his findings.


Dated:  February 3, 2012                          /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).